JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY

### DEFENDANTS
DYNAMIC SOLUTIONS WORLDWIDE, LLC AND QVS, INC.

**(b)** County of Residence of First Listed Plaintiff   Cook County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Milwaukee County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Joseph L. McGlynn, Esq.
de Luca Levine LLC
Three Valley Square, Ste. 220 Blue Bell, PA 19422 215-383-0081

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☒ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §1332(a)(1) and 28 U.S.C. §1391(b)(2)
Brief description of cause:
Property Damage

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE

DOCKET NUMBER

DATE   4/8/20

SIGNATURE OF ATTORNEY OF RECORD
*Joseph Mcglynn*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 2772 Sanders Road Northbrook, IL 60062 _____

Address of Defendant: _____ 12247 W. Fairview Ave. Milwaukee, WI 53226 _____

Place of Accident, Incident or Transaction: _____ 1810 Paxford Road, Allentown, PA 19103 _____

---

*RELATED CASE, IF ANY:*

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/08/2020   _(signature)_ Joseph McGlynn   201181

*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☑ 9. All other Diversity Cases *(Please specify):* _____ Property Damage

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Joseph L. McGlynn _____, counsel of record *or pro se plaintiff*, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 04/08/2020   _(signature)_ Joseph McGlynn   201181

*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY A/S/O JOSEPH AND JOAN HOLOMAN    v. | : : : | CIVIL ACTION |
| DYNAMIC SOLUTIONS WOLDWIDE, LLC AND QVC, INC. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　(X )

| | | |
|---|---|---|
| 4/8/2020 | Joseph L. McGlynn | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-383-0081 | 215-383-0082 | Jmcglynn@delucalevine.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY A/S/O JOSEPH AND JOAN HOLOMAN** <br> 2775 Sanders Road <br> Northbrook, IL 60062 <br><br> **Plaintiff(s),** <br><br> **v.** <br><br> **DYNAMIC SOLUTIONS WORLDWIDE, LLC** <br> 12247 W. Fairview Ave. <br> Milwaukee, WI 53226 <br><br> **And** <br><br> **QVC, Inc.** <br> 1200 Wilson Drive <br> West Chester, PA 19380 <br><br> **Defendant(s).** | **CIVIL ACTION NO:** |

## COMPLAINT

Plaintiff, Allstate Property and Casualty Insurance Company a/s/o Joseph and Joan Holoman (hereinafter "Plaintiff"), by and through its attorneys, deLuca Levine, LLC, hereby demand judgment against the above-named defendant, and state by way of Complaint against them, as follows:

## PARTIES

1.     Allstate Property and Casualty Insurance Company (hereinafter "Allstate" or "Plaintiff"), at all times relevant hereto, is and was an Illinois corporation with its principal place of business at the above-referenced address.

2.      At all times relevant hereto, Allstate provided homeowners insurance to Joseph and Joan Holoman (hereinafter "insureds" or "subrogors") in connection with their property located at 1810 Paxford Road, Allentown, PA 18103 (hereinafter "subject property"), under a policy of insurance which was in full force and effect on all relevant dates, and at all relevant times.

3.      As a result of the negligent actions, inactions, and/or omissions described below by defendant, claims were made on said property insurance policies and Allstate is subrogated to certain rights and interests of the insured for monies paid thereunder, including the claims giving rise to the within cause of action.

4.      At all times relevant hereto, Defendant, Dynamic Solutions Worldwide, LLC (hereinafter "Dynamic") was, upon information and belief, an Illinois corporation with its principal place of business located at 12247 W. Fairview Ave., Milwaukee, WI 53226.

5.      At all times relevant hereto, Defendant, QVC, Inc. (hereinafter "QVC") was, upon information and belief, a Delaware corporation with its principal place of business located at 1200 Wilson Drive, West Chester, PA 19380.

6.      At all times relevant hereto, Defendants, Dynamic and QVC (hereinafter collectively "Defendants"), were in the business of, *inter alia*, designing, assembling, manufacturing, selling, distributing and/or marketing DynaTrap Flylight Indoor Insect Trap with AtrakttaGlo UV Technology and specifically the DynaTrap Flylight Indoor Insect Trap with AtrakttaGlo UV Technology (model F13090) at issue in this case (hereinafter the "product").

## JURISDICTION AND VENUE

7.     Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between entities and/or citizens of different states.  Moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

8.     Venue is proper in this district based on 28 U.S.C. §1391(b)(2) in that a substantial part of the events which give rise to this action occurred within this district.  Defendants regularly conduct business in this district by selling, distributing, and/or marketing DynaTrap Flylight Indoor Insect Trap with AtrakttaGlo UV Technology to retailers in this district.

## STATEMENT OF FACTS

9.     On or about July 18, 2019, a fire erupted at 1810 Paxford Road, Allentown, PA 18103 ("origin property").  This property was owned by Joseph and Joan Holoman.  It was later determined that the fire was caused by, and originated within, a DynaTrap Flylight Indoor Insect Trap, which was purchased by the subrogors sometime around July 4, 2019.

10.    The catastrophic failure of the product caused it to erupt into flames at the origin property.

11.    As a result of the fire, the subject property sustained extensive damage to certain real and personal property, as well as the imposition of additional expenses and hardship.

12.    Pursuant to the terms and conditions of its insurance policy with Joseph and Joan Holoman, and upon timely presentment of a proper claim and proof of loss by

its insured, Allstate Property and Casualty Insurance Company became obligated to and did in fact pay its subrogors, Joseph and Joan Holoman, in an amount of $427,488.67.

## COUNT I – NEGLIGENCE
## PLAINTIFF V. DYNAMIC SOLUTIONS WORLDWIDE, LLC

13.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

14.     The defendants owed a duty to subrogors to design, manufacture, produce, test, inspect, market, distribute and sell the product with reasonable care, and had a duty to protect the subrogors from foreseeable and unreasonable risk of harm.

15.     The defendants breached this duty by, among other things, negligently designing, manufacturing, testing, inspecting and distributing the defective product.

16.     As is set forth more fully above, the defendants knew or should have known that the product they designed, manufactured, produced, tested, inspected, marketed, distributed and sold, in ordinary and foreseeable use, created unreasonable safety risks and would fail to perform as intended, resulting in fires and related property damage.

17.     The defendants knew or should have known that the product created dangerous and unreasonable safety risks as the product had defects which caused them to overheat, smoke, catch fire and ignite other combustible materials in homes and businesses. The defendants knew or should have known that the product had defects that could cause catastrophic property damage, personal injury and/or death.

18.     Based on this knowledge, the defendants had a duty to disclose to the subrogors the serious safety risks created by their product, and a duty to disclose the defective nature of their product.

19.     The defendants had a further duty not to put the defective product on the market and a continued duty to replace their unsafe product, remove their unsafe product from the market and recall their unsafe product from customers.

20.     The defendants failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of their product, by, among other things, failing to design and manufacture the product in compliance with UL requirements, failing to design and manufacture the product in a manner to ensure that under normal intended usage the product would not fail and catch fire, and by failing to undertake a reasonable recall of the product.

21.     The defendants failed to exercise reasonable care in that they failed to adequately and sufficiently warn consumers and users, either directly or indirectly, of the uniform defects in the product.

22.     The defendants failed to exercise reasonable care when they knew of the safety risks posed by the product and actively concealed those risks from subrogors, as well as UL, major US retailers where the product were ultimately sold, and the general public.

23.     As a direct and proximate result of defendants' negligence, subrogors sustained and incurred damages as described herein in an amount of $427,488.67.

**WHEREFORE**, Plaintiff demands judgment against Defendants - jointly, severally, and/or in the alternative with other defendant(s) herein - for damages in an amount of $427,488.67, together with interest, costs, attorneys' fees, and such other damages as may properly be awarded by this Court.

## COUNT II – STRICT PRODUCT LIABILITY
## PLAINTIFF V. DYNAMIC SOLUTIONS WORLDWIDE, LLC

24.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

25.    Defendants are engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting and/or selling appliances, including DynaTrap Flylight Indoor Insect Trap with AtrakttaGlo UV Technology, throughout the United States.

26.    Defendants designed, manufactured, distributed, advertised, marketed, promoted and sold the product at issue herein.

27.    Upon information and belief, the product was expected to, and did, reach subrogors without substantial change in the condition in which the product was manufactured, sold and distributed.

28.    The product was in a defective and unreasonably dangerous condition when it left defendants' possession or control in that, under normal conditions, usage and applications, the product could not withstand the use for which they were intended and instead failed, causing fire, smoke and related damages as well as threatening the consumers' personal safety.

29.    Upon information and belief, subrogors used the product in a manner reasonably intended by defendants.

30.    The product was defective for the following reasons: (1) it was not reasonably safe for the ordinary and intended use; (2) defendants failed to provide subrogors with adequate and sufficient warnings regarding the known and foreseeable safety risks and dangers inherent in the product; (3) the design, methods of manufacture, and testing of the product was inadequate and produced a defective product.

31.    As a direct and proximate result of the defective condition of the defendants' product, subrogors purchased a DynaTrap Flylight Indoor Insect Trap with AtrakttaGlo UV Technology that did not serve the purpose for which they are intended, causing property damages and other incidental and consequential damages to subrogors creating risks of future harm to purchasers of these defective DynaTrap Flylight Indoor Insect Trap with AtrakttaGlo UV Technology.

32.    As a direct and proximate result of such conduct, the subrogors sustained and incurred damage to their real and personal property, as well as additional expenses and hardships besides, in the amount of $427,488.67; to the extent these damages were paid under subrogors' insurance policy, Allstate became subrogated thereto.

33.    For these reasons, Defendant is strictly liable to the Plaintiff for damages under Section 402A of the Restatement (2d) of Torts and the applicable case law of the Commonwealth of Pennsylvania.

**WHEREFORE**, Plaintiff demands judgment against Defendants - jointly, severally, and/or in the alternative with other defendant(s) herein - for damages in an amount of $427,488.67, together with interest, costs, attorneys' fees, and such other damages as may properly be awarded by this Court.

## COUNT III – BREACH OF WARRANTY
## PLAINTIFF V. DYNAMIC SOLUTIONS WORLDWIDE, LLC

34.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

35.    At the time of contracting for the sale and/or distribution of the product, Defendants had reason to know the particular purpose for which the product would be used, and knew that its skill and judgment was being relied upon to furnish a suitable product.

36.     Thus, Defendants breached the implied warranty of fitness for a particular purpose as set out in the Uniform Commercial Code (hereinafter "UCC") 13 Pa.C.S.A. §2-315 in that the product was not fit for the particular purpose for which such products are required.

37.     In addition, Defendants breached its implied warranty of merchantability as set out in 13 Pa.C.S.A. §2-314(c) in that the product was not fit for the ordinary uses for which the subject product was used.

38.     In addition, Defendants breached any and all express warranties made or relating to the subject property that became part of the basis of the bargain for sale of the product in derogation of 13 Pa.C.S.A. §2-313.

39.     Plaintiff's damages occurred as a direct and proximate result of Defendants' breach of its implied warranties of fitness for a particular purpose and merchantability as set out in 13 Pa.C.S.A. §2-315 and §2-314(c) as a result of Defendant's breach of its expressed warranties in derogation of 13 Pa.C.S.A. §2-313.

40.     As a result of the conduct described above, subrogors sustained damages to their real and personal property, and the imposition of additional expenses and hardship besides, in the amount of $427,488.67.

**WHEREFORE**, Plaintiff demands judgment against Defendants - jointly, severally, and/or in the alternative with other defendant(s) herein - for damages in the amount of $427,488.67, together with interest, costs, attorneys' fees, and such other damages as may properly be awarded by this Court.

## COUNT IV – NEGLIGENCE
## PLAINTIFF V. QVC, INC.

41.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

42.     The defendants owed a duty to subrogors to design, manufacture, produce, test, inspect, market, distribute and sell the product with reasonable care, and had a duty to protect the subrogors from foreseeable and unreasonable risk of harm.

43.     The defendants breached this duty by, among other things, negligently designing, manufacturing, testing, inspecting and distributing the defective product.

44.     As is set forth more fully above, the defendants knew or should have known that the product they designed, manufactured, produced, tested, inspected, marketed, distributed and sold, in ordinary and foreseeable use, created unreasonable safety risks and would fail to perform as intended, resulting in fires and related property damage.

45.     The defendants knew or should have known that the product created dangerous and unreasonable safety risks as the product had defects which caused them to overheat, smoke, catch fire and ignite other combustible materials in homes and businesses. The defendants knew or should have known that the product had defects that could cause catastrophic property damage, personal injury and/or death.

46.     Based on this knowledge, the defendants had a duty to disclose to the subrogors the serious safety risks created by their product, and a duty to disclose the defective nature of their product.

47.     The defendants had a further duty not to put the defective product on the market and a continued duty to replace their unsafe product, remove their unsafe product from the market and recall their unsafe product from customers.

48.     The defendants failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of

their product, by, among other things, failing to design and manufacture the product in compliance with UL requirements, failing to design and manufacture the product in a manner to ensure that under normal intended usage the product would not fail and catch fire, and by failing to undertake a reasonable recall of the product.

49.     The defendants failed to exercise reasonable care in that they failed to adequately and sufficiently warn consumers and users, either directly or indirectly, of the uniform defects in the product.

50.     The defendants failed to exercise reasonable care when they knew of the safety risks posed by the product and actively concealed those risks from subrogors, as well as UL, major US retailers where the product were ultimately sold, and the general public.

51.     As a direct and proximate result of defendants' negligence, subrogors sustained and incurred damages as described herein in an amount of $427,488.67.

**WHEREFORE,** Plaintiff demands judgment against Defendants - jointly, severally, and/or in the alternative with other defendant(s) herein - for damages in an amount of $427,488.67, together with interest, costs, attorneys' fees, and such other damages as may properly be awarded by this Court.

## COUNT V – STRICT PRODUCT LIABILITY
## PLAINTIFF V. QVC, INC.

52.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

53.     Defendants are engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting and/or selling appliances, including

DynaTrap Flylight Indoor Insect Trap with AtrakttaGlo UV Technology, throughout the United States.

54.     Defendants designed, manufactured, distributed, advertised, marketed, promoted and sold the product at issue herein.

55.     Upon information and belief, the product was expected to, and did, reach subrogors without substantial change in the condition in which the product was manufactured, sold and distributed.

56.     The product was in a defective and unreasonably dangerous condition when it left defendants' possession or control in that, under normal conditions, usage and applications, the product could not withstand the use for which they were intended and instead failed, causing fire, smoke and related damages as well as threatening the consumers' personal safety.

57.     Upon information and belief, subrogors used the product in a manner reasonably intended by defendants.

58.     The product was defective for the following reasons: (1) it was not reasonably safe for the ordinary and intended use; (2) defendants failed to provide subrogors with adequate and sufficient warnings regarding the known and foreseeable safety risks and dangers inherent in the product; (3) the design, methods of manufacture, and testing of the product was inadequate and produced a defective product.

59.     As a direct and proximate result of the defective condition of the defendants' product, subrogors purchased a DynaTrap Flylight Indoor Insect Trap with AtrakttaGlo UV Technology that did not serve the purpose for which they are intended, causing property damages and other incidental and consequential damages to subrogors

creating risks of future harm to purchasers of these defective DynaTrap Flylight Indoor Insect Trap with AtrakttaGlo UV Technology.

60.     As a direct and proximate result of such conduct, the subrogors sustained and incurred damage to their real and personal property, as well as additional expenses and hardships besides, in the amount of $427,488.67; to the extent these damages were paid under subrogors' insurance policy, Allstate became subrogated thereto.

61.     For these reasons, Defendant is strictly liable to the Plaintiff for damages under Section 402A of the Restatement (2d) of Torts and the applicable case law of the Commonwealth of Pennsylvania.

**WHEREFORE**, Plaintiff demands judgment against Defendants - jointly, severally, and/or in the alternative with other defendant(s) herein - for damages in the amount of $427,488.67, together with interest, costs, attorneys' fees, and such other damages as may properly be awarded by this Court.

## COUNT VI – BREACH OF WARRANTY
## PLAINTIFF V. QVC, INC.

62.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

63.     At the time of contracting for the sale and/or distribution of the product, Defendants had reason to know the particular purpose for which the product would be used, and knew that its skill and judgment was being relied upon to furnish a suitable product.

64.     Thus, Defendants breached the implied warranty of fitness for a particular purpose as set out in the Uniform Commercial Code (hereinafter "UCC") 13 Pa.C.S.A.

§2-315 in that the product was not fit for the particular purpose for which such products are required.

65.     In addition, Defendants breached its implied warranty of merchantability as set out in 13 Pa.C.S.A. §2-314(c) in that the product was not fit for the ordinary uses for which the subject product was used.

66.     In addition, Defendants breached any and all express warranties made or relating to the subject property that became part of the basis of the bargain for sale of the product in derogation of 13 Pa.C.S.A. §2-313.

67.     Plaintiff's damages occurred as a direct and proximate result of Defendants' breach of its implied warranties of fitness for a particular purpose and merchantability as set out in 13 Pa.C.S.A. §2-315 and §2-314(c) as a result of Defendant's breach of its expressed warranties in derogation of 13 Pa.C.S.A. §2-313.

68.     As a result of the conduct described above, subrogors sustained damages to their real and personal property, and the imposition of additional expenses and hardship besides, in an amount of $427,488.67.

**WHEREFORE,** Plaintiff demands judgment against Defendants - jointly, severally, and/or in the alternative with other defendant(s) herein - for damages in the amount of $427,488.67, together with interest, costs, attorneys' fees, and such other damages as may properly be awarded by this Court.

de LUCA LEVINE LLC

BY:   _Joseph McGlynn_

JOSEPH L. McGLYNN, ESQUIRE
PA ID No.: 201181
E-Mail: jmcglynn@delucalevine.com
ATTORNEYS FOR PLAINTIFFS

Three Valley Square, Suite 220
Blue Bell, PA  19422
Telephone: (215) 383-0081
Fax:  (215) 383-0082

Dated: <u>April 8, 2020</u>